I believe we are ready to begin with the first case, which is Ritchie Risk-Linked Strategies v. Coventry First. Good morning, Your Honors. The record clearly establishes that Elliot Spitzer's Attorney General's Office threatened an action against Coventry, and that Coventry knew this for months before the action was filed, but concealed it from Ritchie. In February 2006, Assistant Attorney General David Axson told Coventry that the office had uncovered numerous instances of potential wrongdoing, that it was serious and he was calling to confront Coventry, that the Attorney General could, quote, very well follow up with a potential action, end quote, and that the Attorney General had increased the temperature on the case. Now, after this conversation, Coventry's lawyers repeatedly proposed consent decrees or similar relief. In May of 2006, Coventry's lawyers sent a letter referencing their internal investigation and seeking an amicable resolution, quote, In September of 2006, one of Coventry's principals pleaded the Fifth Amendment in response to every question at an interview with the Attorney General's Office. And then in October of 2006, the Attorney General made good on its threat and it sued Coventry. Your Honors, there is no doubt that an action was threatened against Coventry on this record. The district court mischaracterized or disregarded the critical evidence when it found that there was no threat. But didn't it find as a factual matter that there's no evidence that Axsion identified any particular transaction, any specific potential action, or that he referred to the agreements, LST or Ritchie, and the court, in essence, determined that in the absence of those more specific factors, the conversation couldn't be construed as a threat? Your Honor, your Honor identified the mischaracterization, the precise mischaracterization that I had referred to. So the district court did find, and I'm quoting, There is no evidence that Axsion identified any potential action. That was the finding. Here's Axsion's testimony that the AG, quote, could very well follow up with a potential action. So we submit that that alone is sufficient to find clear error. That's a mischaracterization of the testimony. There was no finding that Axsion was not a credible witness. I don't understand Coventry to be arguing that there was such a finding or that Axsion was not a credible witness. The district court simply mischaracterized that critical testimony and Help me if I'm misunderstanding or misremembering the record, but I was reading that as that the court essentially was saying that in order for there to be a threat, there needed to be some more specificity to the conversation than the conversation he determined to have taken place. And he set that conversation in the context of a series of conversations that he characterized as generally non-adversarial that occurred into the fall of 2006. Respectfully, Your Honor, I don't read the district court's opinion that way. I think Coventry on appeal is trying to recharacterize the opinion such that it characterizes the opinion so that the district court would have been weighing the evidence, but that's not what actually happened. We submit that the district court did not recognize that Axsion even Why isn't that a factual finding? I mean, the district court heard the witnesses and it made its findings a fact. Well, it is a factual finding, Your Honor, and we submit that it's clear error, that the clear error standard for this factual finding is met in this case for the following reasons. First of all, there's the mischaracterization, which I described. Secondly, there is the overwhelming, we submit, the overwhelming evidence from witnesses whose credibility is not in question, was not questioned by the district court, from contemporaneous documentary evidence that this threat was issued. The district court noted that Mr. Axsion hadn't identified any specific transactions or any specific acts, and therefore, the district court did not feel that this rose to the level of a threatened action. Well, let me address that, Your Honor. The district court, Axsion did not reference the agreement with Ritchie. Certainly, he didn't do that, but respectfully, that's not required to constitute a breach of the warranty that's at issue. So the warranty required Coventry to disclose any threatened action seeking a determination or ruling that might materially and adversely affect the performance of LST. Now, the threatened action, precisely what Axsion said in the call, it did just that. It threatened LST's performance in two ways. LST was required to provide policies that were lawfully acquired, and the threatened action was to the effect that Coventry did not lawfully acquire its policies, that there was a bid-rigging scheme, and that Coventry committed fraud in connection with the acquisition of the policy. Secondly, LST was required to deliver policies with clean title, and the attorney general sought rescission of the policies such that the original owners could reacquire them, and that clouded the title. And so whether or not Axsion was specifically referencing Ritchie's contract is irrelevant, we submit, because so long as the threat might, and I'll emphasize the word might in the representation of warranty, might materially and adversely affect performance by LST, then the warranty was breached, and we submit that there's no question that that's the case. Axsion never identified, never said that they would file a complaint if X, Y, or Z were found or didn't happen, right? Well, I think that is the effect of what he did. I mean, he didn't use the word complaint, Your Honor, but what he said was could very well follow up with an action, and I don't think there's any other way of interpreting the word action. Doesn't that still sound rather contingent to me? I mean, he didn't say, you know, we will be filing an action at a particular time or reference a civil complaint, right? He just said there's evidence of potential wrongdoing. Well, he didn't identify a potential time, Your Honor, that's true. But what we submit is if you take what he said as a whole, and I'll just summarize that again briefly, and then that alone is sufficient to constitute a threat, but then you combine that with the other. It has to be a threat in proceeding, right, or a threat in action. It does, but what he said was he could very well follow up with a potential action, that it was serious and he was calling to confront Coventry, that he had increased the temperature on the case. Coventry certainly understood that to be a threat because, according to Axsion and according to Coventry's own contemporaneous documentation, Coventry then went back to the Attorney General proposing consent decrees and similar relief. And I submit that you don't do that unless you're under threat of a lawsuit. And so we think that evidence is clear, Your Honor, that, you know, there was a threat, that there was no doubt in anyone's mind, in the Attorney General's mind, certainly in Coventry's mind, that they were being threatened with an action. I know his time is almost up, but I want to ask you about Ritchie I and Ritchie II. Yes. And is Ritchie II bound by the waiver that Ritchie I made in the intercreditor agreement? It is not, Your Honor. And why not? For at least two reasons. First of all, because there was no waiver in the amendment to the intercreditor agreement that Ritchie II signed. Ritchie II entered — Acknowledge there was no breach, right? There was no waiver. So Ritchie I's intercreditor amendment did contain a waiver. Now, the parties dispute what that waiver meant, but it did contain a waiver. But the intercreditor amendment that Ritchie II entered did not contain any such waiver. And so there is simply no — The Supreme Court found that there was basis to find that there was this kind of a stopple, that Ritchie I and Ritchie II were basically the same, and so Ritchie II should be bound. Why is that wrong? It's wrong because — well, the district court's opinion was it relied on the notion of quasi-stopple. And we submit that that doesn't apply here. The idea, I think, was that Ritchie II was deriving benefits somehow from Ritchie I's intercreditor amendment and therefore should be quasi-stopped. And it's problematic for a host of reasons. First of all, Ritchie II didn't benefit at all from Ritchie I's amendment because Ritchie II wasn't a party to that amendment. It had its own amendment. Moreover, to apply the doctrine of quasi-stopple, there needs to be unconscionability. And we submit that there's no unconscionability here. Coventry is a sophisticated party represented by a sophisticated counsel, and it knew what it was signing. And there's no serious argument that Ritchie II's agreement was unconscionable as to Ritchie II. Thank you. May it please the Court. Allison Rushing on behalf of Defendants Appellees. Appellants must prevail on all four issues that they've raised on appeal in order to win a reversal of the district court's judgment here. Mr. Olney spent a long time talking about David Axon, and I'd like to address that. But even if he's correct on all of those points, appellants can't win reversal because they did not give timely notice of any breach, a breach of any of the four warranties that are at issue here. The district court correctly found that appellants were accurately informed as of June 27, 2006, of anything that they needed to know about whether this investigation amounted to a threat of an action at that point. They did not serve notice within 30 days. In fact, they continued to buy policies from Coventry. And then even when they did give notice of a breach four months later in November, they only alleged a breach of the no proceedings warranty. They never gave LST notice of a breach of any other warranty. Even on appeal, in both of its briefs and neither brief, does Ritchie claim that it ever gave the required written notice of a breach of the other three warranties. We submit that that resolves this entire case, and it does it easily and in a straightforward manner. Your adversary says that the ruling the district court made as to the other warranties was premature because it wasn't part of the bench proceeding and that Ritchie could have shown that notice would have been futile as to those breaches. Yes. Would you respond to that argument? Certainly, Judge Livingston. First of all, I'd like to just point out again, because I think this is important, that Ritchie does not claim that it ever gave written notice of a breach of those three warranties. It didn't claim it in the district court. It doesn't claim it here. Here, they fall back on the concept of futility. But again, even in the district court, they did not raise futility, and that's important because they had incentive to do so. They claim now that futility would apply to the no proceedings warranty and to the other three. What could LST have done had there been notice given? If notice was given, LST could have repurchased or replaced the policies at issue. The cure here is indisputably repurchase and replacement for the breaches of all four of these because they all go to the clean title question. There is no evidence that LST could not have repurchased and replaced. They could have replaced with policies sourced from someone else or even policies from Coventry. Even after the complaint was filed here, LST continued to sell policies. So there's no evidence to suggest they couldn't have repurchased or replaced the policies that were sold to Ritchie. Importantly, only— It would apply to all of the breaches? Yes, that's right, Your Honor, because the damage that Ritchie claimed from all of the breaches had to do with a cloud on the title of the policies. So the cure, the problem that they alleged was that they were given bad policies, and the way to cure that would be to replace them. I'd point out that of all the policies that were sold to Ritchie, only 85 came from New York sellers. So they claim that how could you replace this 1,000-something policies? First of all, there's no evidence that LST couldn't do that, and any lack of evidence redounds against Ritchie because it was the party who had the burden to raise this in the district court and failed to do so. But then second of all, it's really only a question of 85 policies, and that would have been easy for LST to do. But again, they didn't raise this in the district court. They mentioned the word futility in their reply on their motion to amend. The district court did not address it because it was raised so briefly. So they're asking this court to decide something that requires evidence. It's an evidentiary sort of question. They're asking this court not only to decide it but to reverse the district court on that ground when they didn't raise it below and the district court didn't have the opportunity to address it. So we would submit that futility is not a problem here. And moreover, they were on notice. This was not a surprise that these other warranties would be addressed. As the district court noted, the whole idea of raising the no-proceedings warranty first was that resolving it and its defenses might resolve the entire case as to the other warranties as well. I'd point the court to the letters that the parties submitted on that. Those are at A423 and 426. The parties submitted notice letters to the court suggesting bifurcation for this very reason. And then Richie's proposed findings actually proposed that, told the court, we provide a notice of the no-proceedings warranties and other warranties. They can't be surprised that the district court considered that and rejected it. Again, as to the no-proceedings warranty, Richie did give notice in November. We say that notice is untimely. The district court agreed, and that's a factual finding, about their knowledge. In June 27th of 2006, they had knowledge of everything they needed to know, even if the investigation amounted to a threat of an action at that point. And we agree, for the reasons Your Honors have pointed out this morning, that it doesn't and that it didn't. And it's within the trial court's discretion to weigh the evidence and find there wasn't a threat. But even if there was, Richie was aware of everything they needed to know at that point. I'd point the court to Jeff Mulholland's notes, on which the district court relied, on Mr. Mullholland's notes and his testimony. His notes indicate he was told on June 27th, 2006, that the downside is, quote, an antitrust suit against the life settlement industry. So if there were a threatened action, he was informed that there was the threat of an action, the kind of action, an antitrust suit, who it would be against, that it would be against the life settlement industry, of which Coventry is a major player. He even testified that after that conversation, it was unclear to him if Mr. Berger, the executive vice president of LST in Coventry, would be subject to a criminal investigation. He knew what the government was looking for. They were looking for fictitious bids. They had been asking Coventry about fees paid to brokers. So all of this evidence shows that they were on notice of everything they needed to know about whether there was a threat at that point, yet they did not give timely notice and, in fact, continued to buy policies. Could you address the intercreditor agreement, the subject my colleague was asking your adversary about, and particularly the district court's reliance on quasi-estoppel? Certainly, certainly. So the testimony before the district court on which it relied was that the waiver in the intercreditor agreement grew out of this draw account dispute. Ritchie 1 and Ritchie 2 both had draw accounts to which an LST claimed it was entitled to the money in those accounts. Ritchie 1 and Ritchie 2 said, no, we don't want to give you the money anymore. The negotiations occurred between one representative, same representative for Ritchie 1 and Ritchie 2, and a representative for LST. They agreed the way to resolve this dispute is we'll waive our previously noticed breach, or where we said you breached the no proceedings warranty, in exchange for LST releasing the funds. The CEO for Ritchie 1 and Ritchie 2 is the same person. He signed the intercreditor agreement for Ritchie 1 that includes the waiver, and LST signed both Ritchie 1 and Ritchie 2's agreements releasing the funds. So the district court found that the evidence was that Ritchie – The terms were different, right? One included the waiver and one did not. That's right. So the written contract, the intercreditor amendment for Ritchie 2, did not include that waiver. But the district court found that Ritchie 2 had already gotten the benefit of the draw account funds. LST had released the funds there. Could you address – I mean, isn't there some significance? We're talking about sophisticated parties here. Isn't there some significance to the absence of that waiver in the second agreement? Well, that's why the district court returned to estoppel principles, Your Honor. Equitable principles like estoppel fill these gaps when it seems as though the parties have agreed to something and then they received the benefit, which is important here. Ritchie 2 received the benefit. Your adversary argued that they did not receive the benefit. Ritchie 2 did not. So why is that wrong? Respectfully, that's an incorrect representation of the facts, Your Honor. It's certainly not the facts as the district court found them. Ritchie 2 received its draw account funds just like Ritchie 1 did. And the testimony, uncontroverted testimony, was they received those funds and they waived the right. In exchange, they waived the breach. LST, if LST had released the funds to Ritchie 2 but it didn't get a waiver of the breach, it received nothing in return. There would have been no – there would have been nothing that LST got out of that bargain. So the testimony was, and that's why the district court found that once Ritchie 2 got the benefit of the bargain, it couldn't turn around and then say, oh, now we're not going to waive. Now we're not going to say there's no breach. I thought the doctrine of quasi-estoppel precluded a party from asserting a right that was inconsistent with a position that he had previously taken. And I'm having difficulty seeing what Ritchie – how Ritchie 2 took a position that was inconsistent so that they should be estopped. Well, the position that they took is the position in the negotiations when they said, we will waive this in exchange for the releases of our draw account funds. We will waive this breach. Now, we don't dispute it. That didn't end up in the amendment. But that's why this doctrine comes in, because they actually did receive those funds. And then they can't turn around and change their position. I'd point out that although the word unconscionability is used sometimes here, courts do not apply that in the sense that we typically think. They don't – they're not looking for unequal bargaining power. This often comes up in the tax context, where a party will take one position on its tax returns and then come into court and try to assert a different position. There's – courts never look to see whether, you know, that party had unequal bargaining power over the court, which is the other party in that situation. They're speaking of unconscionability in the sense of an unfairness, taking one position and then turning around and rejecting the obligation that comes with that position. But I just remind the Court that even if it disagrees with us on this question of quasi-estoppel, that appellants must prevail on all four of the issues that they have raised on appeal in order to win reversal here. And we respectfully submit that they cannot do that, and especially for the reasons that we pointed out with regards to notice. Thank you, Your Honors. Your Honors, I'd like to address the notice question. So the district court found that Ritchie should have provided notice after the June 2006 call referenced by my adversary. The threat was not disclosed on that call. The threat was concealed on that call. And it's important to distinguish between an investigation on the one hand and a threat on the other. There's no dispute here that an investigation — Isn't that the opposite of what you were arguing on the other point? It's not, Your Honor. So just addressing that briefly. Our argument on the point I think Your Honor is referencing about — Well, before you were arguing it was a threat and not just an investigation, and now you're arguing it was just an investigation and not a threat, it seems to me. Oh, no. What we're arguing, Your Honor, is that there was a threat. The threat was concealed. But only the investigation was disclosed to Ritchie. That's the basis of our argument. There's no dispute that the investigation was disclosed. But what Coventry told — what Coventry — They never gave notice at any time, correct? No. There was notice, Your Honor. So — When was that? Well, it was multiple times. So just to give Your Honor the chronology briefly, if it's okay. There was the June 2006 call on which — and that call was conducted by Coventry's lawyer, Brian Brooks, who testified that he was asked on the call whether the AG suggested we had done anything wrong, and, quote, his answer to those questions on that call was, no, they hadn't. So that's what Ritchie was told in that call. What Ritchie understood at the time was that they were under investigation, as was the entire industry, and that — and the Mulholland notes that my opponent referenced say that Coventry is a source of information. That's what Ritchie was told. Now, after the AG's suit was filed, Ritchie gave a notice, and that was in November of 2006. And the notice said, you, Coventry, have breached the no proceedings warranty. Now, Ritchie did not need to say anything further within that notice because it had identified the breach. That's all the contract required it to do. But he — But again, it's a factual finding that the district court made that Ritchie got notice much earlier than that. It's a factual finding, Your Honor, and I respectfully submit — And that's clearly erroneous because — It's clearly erroneous because there is no evidence in the record, none, to suggest that the threat was disclosed in that call. I believe my time is up. Thank you, Your Honors. Thank you both. Very well argued.